# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| **MICHAEL SUSSMAN,**<br><br>Plaintiff,<br><br>v.<br><br>**SOUTH SALT LAKE CITY, INC.; UTAH TRANSIT AUTHORITY; UTA POLICE OFFICER WIHONGI; SHANTEE WELSH; and SALT LAKE REGIONAL MEDICAL CENTER,**<br><br>Defendants. | **REPORT AND RECOMMENDATION**<br><br><br>**Case No. 2:17-cv-01012-DN-PMW**<br><br><br>**Chief District Judge David Nuffer**<br><br>**Chief Magistrate Judge Paul M. Warner** |

Chief District Judge David Nuffer referred this case to Chief Magistrate Judge Paul M. Warner pursuant to 28 U.S.C. § 636(b)(1)(B).[1] At the outset, the court notes that Michael Sussman ("Plaintiff") is proceeding pro se in this case. Consequently, the court will construe his pleadings liberally. *See, e.g.*, *Ledbetter v. City of Topeka*, 318 F.3d 1183, 1187 (10th Cir. 2003). The court also notes that Plaintiff has been permitted to proceed in forma pauperis under 28 U.S.C. § 1915 ("IFP Statute").[2] Before the court is the review of Plaintiff's complaint[3] under the authority of the IFP Statute.

---

[1] *See* docket no. 7.

[2] *See* docket no. 2.

[3] *See* docket no. 3.

## BACKGROUND

Plaintiff's complaint is generally disjointed and confusing. Nevertheless, the court has liberally construed it to allege the following facts relevant to Plaintiff's asserted claims.

On or about August 23, 2017, Plaintiff contends that he "was the victim of a number of violent felonies" on State Street in South Salt Lake City ("SSLC"), which is one of the named Defendants in this case.[4] Specifically, Plaintiff asserts that he was struck in the head with a "disassembled folding chair in a bag" by Defendant Shantee Welsh ("Welsh").[5]

Plaintiff maintains that he did not retaliate, but instead sought to escape by way of a bus operated by Defendant United Transit Authority ("UTA").[6] Plaintiff contends that the driver of the bus denied Plaintiff entry aboard the bus, "trapped Plaintiff's arm and initially prevented his escape," and "destroyed Plaintiff's hat in Plaintiff's successful attempt to extricate his arm."[7]

Plaintiff alleges that he then called 911.[8] Plaintiff asserts that SSLC Police eventually arrived at the scene and ordered Plaintiff to sit on the curb.[9] Plaintiff maintains that the SSLC Police then "began their attack."[10] Plaintiff contends that he was handcuffed and suffered an

---

[4] *Id.* at 3.

[5] *Id.*

[6] *See id.*

[7] *Id.*

[8] *See id.*

[9] *See id.*

[10] *Id.*

"attack on [his] neck from behind."[11] According to Plaintiff, SSLC Police chose the location for their interaction with Plaintiff "in order to attack [his] reputation."[12] Plaintiff asserts that he now "experiences chronic, overwhelming pain" as a result of the interaction.[13]

Plaintiff contends that he then encountered UTA Police Officer Wihongi ("Wihongi").[14] Plaintiff alleges that Wihongi:

- "attacked the right shoulder of the Plaintiff under the pretext of helping Plaintiff stand up while being tortured with handcuffs[;]"[15]

- "was as dramatic as possible removing the [SSLC] torturing device and administering his own[;]"[16]

- failed to provide Plaintiff with Miranda rights;[17]

- "unlawfully searched Plaintiff's backpack, pockets, and wallet" without "permission, warrant, probable cause" or the existence of "immediate exigent cirumcstances[;]"[18]

- "engineer[ed] a failure to appear warrant" against Plaintiff without due process;[19]

---

[11] *Id.* at 3-4.

[12] *Id.* at 4.

[13] *Id.*

[14] *See id.*

[15] *Id.*

[16] *Id.*

[17] *See id.* at 5.

[18] *Id.*

[19] *Id.*

- gave "Plaintiff criminal trespass status for 30 days" without due process, which resulted in "a failure to appear warrant for the Plaintiff's arrest and a trial *in absentia*," caused Plaintiff's inability to receive mail for 30 days, forced Plaintiff "to sometimes undergo involuntary starvation" and eat "out of trash receptacles," and prevented Plaintiff "from getting follow[-]up medical treatment[;]"[20]

- forced "Plaintiff to walk with multiple injuries, most of which Wihongi inflicted[;]"[21]

- "twice diagnosed the Plaintiff as having mental illness," while "fail[ing] to diagnose the Plaintiff's heart condition[;]"[22] and

- placed "two of the Plaintiff's never-opened water bottles of water on the tarmac and compelled the Plaintiff to pick them up lest he be falsely charged with littering."[23]

Plaintiff asserts that SSLC Medics arrived at the scene, but "were dishonest and failed to provide a reasonable standard of care."[24] Plaintiff contends that one of the SSLC Medics, whom Plaintiff refers to as "tatoo [sic] boy," told Plaintiff that he hadn't been "'hit in the head that hard.'"[25] Plaintiff alleges that the SSLC Medics did not take him to the emergency room, but instead "kept the Plaintiff in the sun and in the heat in order to harm him physically."[26]

---

[20] *Id*. at 5-6.

[21] *Id*. at 6.

[22] *Id*.

[23] *Id*.

[24] *Id*. at 4-5.

[25] *Id*. at 5.

[26] *Id*.

4

Plaintiff contends that on an unspecified date he had a second encounter with SSLC Police "involving unlawful restraint."[27] In support of that contention, Plaintiff alleges only that there were two officers involved, with one of the officers being the "most aggressive."[28]

Plaintiff asserts that SSLC Medics arrived at the scene of the second encounter.[29] Plaintiff maintains that the two medics were "hell bent on antagonizing" him and were very talkative with him while they transported him to Defendant Salt Lake Regional Medical Center ("SLRMC").[30]

Plaintiff alleges that once he arrived at SLRMC, its staff refused to provide him with medical treatment.[31] Plaintiff further alleges that he gave no consent to a "forced hospital transfer by his own power."[32] Plaintiff contends that these actions were violations of the Emergency Medical Treatment and Active Labor Act ("EMTALA").[33] *See* 42 U.S.C. § 1395dd.

Based upon those factual allegations, Plaintiff asserts multiple "claims" and requests for relief. After giving Plaintiff's complaint a very liberal construction, the court has determined that it asserts claims for certain civil rights violations, violations of EMTALA, torture, and state law claims for false arrest and assault.

---

[27] *Id*. at 7.

[28] *Id*.

[29] *Id*.

[30] *Id*.

[31] *See id*. at 7-8.

[32] *Id*. at 8.

[33] *See id*.

## **LEGAL STANDARDS**

Whenever the court authorizes a party to proceed without payment of fees under the IFP Statute, the court is required to "dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). In determining whether a complaint fails to state a claim for relief under the IFP Statute, the court employs the same standard used for analyzing motions to dismiss for failure to state a claim under rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Kay v. Bemis*, 500 F.3d 1214, 1217-18 (10th Cir. 2007). Under that standard, the court "look[s] for plausibility in th[e] complaint." *Id*. at 1218 (quotations and citations omitted) (second alteration in original). More specifically, the court "look[s] to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief. Rather than adjudging whether a claim is 'improbable,' '[f]actual allegations [in a complaint] must be enough to raise a right to relief above the speculative level.'" *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)) (other quotations and citation omitted) (second and third alterations in original).

In undertaking that analysis, the court must be mindful that Plaintiff is proceeding pro se and that "[a] pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *see also, e.g.*, *Ledbetter*, 318 F.3d at 1187. At the same time, however, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant," *Bellmon*, 935 F.2d at 1110, and the court "will not supply additional facts, nor will [it] construct a legal theory for [a pro se] plaintiff that assumes facts that have not been pleaded." *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989) (per curiam). Further,

6

> [t]he broad reading of [a pro se] plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based. . . . [C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based. This is so because a pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted. Moreover, in analyzing the sufficiency of the plaintiff's complaint, the court need accept as true only the plaintiff's well-pleaded factual contentions, not his conclusory allegations.

*Bellmon*, 935 F.2d at 1110 (citations omitted).

After reviewing a pro se plaintiff's complaint under the IFP Statute, the court may dismiss the complaint for failure to state a claim "only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." *See Kay*, 500 F.3d at 1217 (quotations and citation omitted).

## **ANALYSIS**

The court now turns to reviewing Plaintiff's complaint under the authority of the IFP Statute. As noted above, the court has liberally construed Plaintiff's complaint to assert claims for (1) civil rights violations, (2) violations of EMTALA, (3) torture, and (4) state law claims for false arrest and assault. The court will address those claims in turn, followed by (5) whether it would be futile to allow Plaintiff to amend his complaint.

**I.     Civil Rights Violations**

Plaintiff alleges that his civil rights were violated under the following theories: (A) excessive force; (B) *Miranda* rights violations; (C) violations of his "rights to travel by public

7

transportation";[34] and (D) unreasonable search and seizure, violations of the right to free speech, and due process violations.

### A. Excessive Force

Plaintiff's claim for excessive force is based upon the events surrounding his short detention and appears to directed at SSLC, UTA, and Wihongi. Although Plaintiff fails to cite a specific constitutional basis for his claim, the court has determined that it is best categorized as an alleged violation of the Fourth Amendment.

The Fourth Amendment protects due process rights up until a probable cause determination, and an excessive force claim brought pursuant to the Fourth Amendment assesses the objective reasonableness of the Defendants' actions. *See Estate of Booker v. Gomez*, 745 F.3d 405, 419-420 (10th Cir. 2014); *see also Graham v. Connor*, 490 U.S. 386, 388-95 (1989) (holding that the Fourth Amendments objective reasonableness standard governs a free citizen's claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other seizure of his person). The Supreme Court has noted that its "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment.") (quotations and citation omitted).

---

[34] *Id*. at 8.

Plaintiff makes only conclusory allegations supporting this claim, which the court is not required to accept. *See Bellmon*, 935 F.2d at 1110 (providing that "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based" and that when analyzing a complaint under the IFP Stataute, "the court need accept as true only the plaintiff's well-pleaded factual contentions, not his conclusory allegations) (citations omitted); *Dunn*, 880 F.2d at 1197 (providing that the court "will not supply additional facts, nor will [it] construct a legal theory for [a pro se] plaintiff that assumes facts that have not been pleaded."). Furthermore, even accepting those allegations as being true, they fall well short of alleging a viable claim for excessive force under the Fourth Amendment. Plaintiff's allegations simply do not come close to establishing an objectively unreasonable use of force by SSLC Police or Wihongi during Plaintiff's short detention. *See, e.g.*, *Graham*, 490 U.S. at 396. Therefore, this claim should be dismissed.

### B. *Miranda* Rights

Plaintiff bases this civil rights claim on his allegation that Wihongi failed to read Plaintiff his *Miranda* rights. Tenth Circuit law is clear that a plaintiff may not recover damages in a civil rights action for a *Miranda* violation. *See, e.g.*, *Haulman v. Jefferson Cty. Sherrif Office*, 15 F. App'x 720, 721 (10th Cir. 2001) (concluding that the plaintiff could not recover damages on a civil rights claim for a *Miranda* violation because "the law in this circuit is clear that the only remedy available for a *Miranda* violation is the suppression of any incriminating evidence"); *Bennett v. Passic*, 545 F.2d 1260, 1263 (10th Cir. 1976) ("No rational argument can be made in support of the notion that the failure to give *Miranda* warnings subjects a police officer to liability under the Civil Rights Act."). Accordingly, this claim should be dismissed.

### C. Public Transportation

Plaintiff alleges that his "rights to travel by public transportation" were violated.[35] Notably, Plaintiff has not cited to, and the court is unaware of, any authority demonstrating the existence of a right to public transportation guaranteed by the Constitution or any other provision of federal law. While various statutes and regulations prohibit discrimination in public transportation based on race and other protected categories, Plaintiff does not allege that he was discriminated against because of his membership in any protected class. Because Plaintiff has not demonstrated the existence of a federally protected right of which he was deprived, this claim should be dismissed. *See, e.g.*, *Wittner v. Banner Health*, 720 F.3d 770, 773 (10th Cir. 2013) (providing that a civil rights claim must allege "both the existence of a federally-protected right and the deprivation of that right by a person acting under color of state law").

### D. Unreasonable Search and Seizure, Free Speech, and Due Process

In support of his unreasonable search and seizure claim, Plaintiff includes only three conclusory sentences without any supporting factual allegations.[36] As for his free speech claim, Plaintiff simply states that his right to free speech was violated,[37] but nowhere in his complaint does he provide any supporting factual allegations for that claim or make any connection between that claim and the factual allegations he has included. With respect to his due process claim, Plaintiff makes the bald assertion that Wihongi "engineer[ed] a failure to appear warrant"

---

[35] *Id*.

[36] *See id*. at 5.

[37] *See id*. at 8.

against him without due process and gave "Plaintiff criminal trespass status for 30 days" without due process.[38] However, Plaintiff does not include any factual allegations indicating how he was denied due process in either instance.

Plaintiff's scant allegations in support of these claims are too conclusory in nature to state claims upon which relief can be granted. *See Bellmon*, 935 F.2d at 1110; *Dunn*, 880 F.2d at 1197. Accordingly, these claims should be dismissed.

## II. EMTALA Violations

Plaintiff's allegations supporting his claim for violations of EMTALA appear to be directed at only SLRMC. Plaintiff alleges that after he arrived at SLRMC following his second encounter with SSLC Police, SLRMC staff refused to provide him with medical treatment.[39] Plaintiff further alleges that he gave no consent to a "forced hospital transfer by his own power."[40] Plaintiff contends that these actions were violations of EMTALA.[41]

EMTALA is a federal statute that provides individuals with civil remedies for violations of its provisions. *See* 42 U.S.C. § 1395dd(d). Under EMTALA,

> a hospital that receives Medicare payments is faced with two requirements. First, if an individual arrives at the emergency room and requests treatment, the hospital must "provide for an appropriate medical screening examination . . . to determine whether or not an emergency medical condition . . . exists." Second, "[i]f an individual at a hospital has an emergency medical

---

[38] *Id*. at 5-6.

[39] *See id*. at 7-8.

[40] *Id*. at 8.

[41] *See id*. at 7-8.

11

> condition which has not been stabilized . . . , the hospital may not transfer the individual unless" certain conditions are met.

*Urban By & Through Urban v. King*, 43 F.3d 523, 525 (10th Cir. 1994) (quoting 42 U.S.C. § 1395dd(a), (c)(1)) (other citations omitted) (alterations in original).

EMTALA defines an emergency medical condition as

> a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in—
>
>> (i) placing the health of the individual (or, with respect to a pregnant woman, the health of the woman or her unborn child) in serious jeopardy,
>>
>> (ii) serious impairment to bodily functions, or
>>
>> (iii) serious dysfunction of any bodily organ or part . . . .

42 U.S.C. § 1395dd(e)(1)(A)(i)-(iii). "A facial reading of § 1395dd(e)(1) requires some manifestation of acute symptoms so the hospital would know of [an individual's] condition." *King*, 43 F.3d at 526.

Plaintiff's scant allegations fall well short of stating any colorable claim under EMTALA. With respect to EMTALA's first requirement, Plaintiff has not alleged that he exhibited any acute symptoms when he arrived at SLRMC so that its staff would know of any emergency medical condition. *See id.* As for EMTALA's second requirement, Plaintiff has not alleged he had an unstabilized medical condition or that SLRMC transferred him to another hospital. Indeed, by his own admission, Plaintiff contends that his transport to another hospital was a "forced hospital

transfer by his own power."[42] For those reasons, Plaintiff's claim for EMTALA violations should be dismissed.

### III. Torture

Plaintiff's claim for torture alleges violations of 18 U.S.C. § 2340A. That claim fails for two reasons. First, because Plaintiff's complaint alleges activities that occurred in or around the South Salt Lake City area, and not outside of the United States, the above-referenced statute is wholly inapplicable. *See Renkel v. United States*, 456 F.3d 640, 644-45 (6th Cir. 2006) (providing that 18 U.S.C. § 2340A is a criminal statute that "criminalize(s) torture outside the United States"). Second, and more importantly, the statute Plaintiff cites is a criminal statute and does not provide any private right of action for relief. *See id*. For those reasons, Plaintiff's claim for violations of 18 U.S.C. § 2340A should be dismissed.

### IV. State Law Claims

Plaintiff's allegations supporting his state law claim for false arrest appear to be directed at SSLC, UTA, and Wihongi. Under a very broad reading of Plaintiff's complaint, his state law claim for assault could be construed to be asserted against SSLC, UTA, and Wihongi. Those claims are all barred by the Governmental Immunity Act of Utah ("GIAU"). *See* Utah Code §§ 63G-7-101 to -904.

The GIAU provides that "each governmental entity and each employee of a governmental entity are immune from suit for any injury that results from the exercise of a governmental function." *Id*. § 63G-7-201(1). A governmental entity is defined as "the state and its political

---

[42] *Id*. at 8.

subdivisions." *Id*. § 63G-7-102(4). The state is defined to include any "authority," *id*. § 63G-7-102(10), including UTA. *See Greene v. Utah Transit Auth.*, 37 P.3d 1156, 1158 (Utah 2001) ("Because UTA is a governmental entity, an action against it may proceed only if allowed by the [GIAU]."). A political subdivision is defined to include any "city," including SSLC. Utah Code § 63G-7-102(8). An employee of the state or its political subdivisions perform a governmental function during "each activity, undertaking, or operation of a governmental entity," which in this case would include Wihongi. *Id*. § 63G-7-102(5)(a).

In relevant part, with respect to immunity from suit, the GIAU provides that

> [a] governmental entity, its officers, and its employees are immune from suit, and immunity is not waived, for any injury proximately caused by a negligent act or omission of an employee committed within the scope of employment, if the injury arises out of or in connection with, or results from . . . assault [or] false arrest . . . .

*Id*. § 63G-7-201(4)(b).

Pursuant to the GIAU, SSLC, UTA, and Wihongi are immune from suit with respect to Plaintiff's state law claim for false arrest and assault. Accordingly, those claims should be dismissed.

Plaintiff's state law claim for assault appears to also be directed at Welsh. "Under Utah law, [a]n assault is an act (a) . . . intending to cause a harmful or offensive contact with the person of the other . . . or an imminent apprehension of such a contact by which (b) . . . the other is . . . put in such imminent apprehension." *Reynolds v. MacFarlane*, 322 P.3d 755, 758 (Utah Ct. App. 2014) (quotations and citations omitted) (alterations in original). Additionally, "[a]n attempt to inflict a harmful or offensive contact or to cause an apprehension of such contact does

14

not make the actor liable for an assault if the other does not become aware of the attempt before it is terminated." *Id*. (quotations and citations omitted)

In support of his assault claim against Welsh, Plaintiff makes only conclusory allegations, which the court is not required to accept. *See Bellmon*, 935 F.2d at 1110; *Dunn*, 880 F.2d at. Furthermore, even when the court assumes the truth of all of Plaintiff's conclusory allegations about his encounter with Welsh, those allegations do not support a claim for assault. For those reasons, Plaintiff's assault claim against Welsh should be dismissed.

## V. Futility of Amendment

The court has determined that all of Plaintiff's causes of action should be dismissed for failure to state a claim upon which relief can be granted. However, as previously noted, after reviewing a pro se plaintiff's complaint under the IFP Statute, the court may dismiss the complaint for failure to state a claim "only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." *See Kay*, 500 F.3d at 1217 (quotations and citation omitted).

Given the foregoing analysis, the court has determined that Plaintiff could not provide any additional, plausible allegations that would save any of his claims from dismissal. Accordingly, the court concludes that it would be futile to provide Plaintiff with an opportunity to amend his complaint.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, the court concludes that Plaintiff's complaint fails to state claims upon which relief can be granted. The court also concludes that it would be futile to provide Plaintiff with an opportunity to amend his complaint. *See id*. Accordingly, IT IS HEREBY

RECOMMENDED that this action be DISMISSED WITH PREJUDICE under the authority of the IFP Statute.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

Based upon that conclusion, IT IS FURTHER RECOMMENDED that:

1. Plaintiff's "EMERGENCY EX PARTE MOTION FOR EMERGENCY ORDER TO SHOW CAUSE AND COMPEL ATTENDANCE TO PREVENT UNLAWFUL PLAN OF ALL DEFENDANTS"[43] be deemed MOOT.

2. SSLC's motion to dismiss[44] be deemed MOOT.

3. Plaintiff's "MOTION TO MOVE THE CASE TO THE FRONT OF THE LINE"[45] be deemed MOOT.

Copies of this Report and Recommendation are being sent to all parties, who are hereby notified of their right to object.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The parties must file any objection to this Report and Recommendation within fourteen (14) days after being served with a copy of it.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Failure to object may constitute waiver of objections upon subsequent review.

DATED this 7th day of September, 2018.

BY THE COURT:

PAUL M. WARNER
Chief United States Magistrate Judge

---

[43] *See* docket no. 8.

[44] *See* docket no. 11.

[45] *See* docket no. 21.